MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorney

    450 Golden Gate Avenue, 11th Floor
    San Francisco, California 94102
    Telephone: (415) 436-6830
    Facsimile: (415) 436-7234
    E-mail: kyle.waldinger@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 14-0289 CRB |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| HELENA WEIL, | Hearing Date: January 21, 2015 |
| Defendant. | Time: 10:00 a.m. |
| | Court: Hon. Charles R. Breyer |

      The defendant Helena Weil is scheduled to be sentenced on January 21, 2015. On May 23, 2014, Weil was charged in a one-count Information with a violation of 18 U.S.C. § 1519. That statute prohibits the alteration or falsification of records with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States. The defendant formally waived indictment on May 29, 2014. Pursuant to a plea agreement with the government, Weil entered a plea of guilty on July 2, 2014, to the single count of the Information. The defendant (a licensed and practicing psychologist) admitted that, between March 2006 and December 2009, she submitted over 1,100 billings to the U.S. Department of Labor's Office of Workers' Compensation Programs ("OWCP") in which she falsely purported to have provided in-person psychological services to her U.S. Government employee-patients. In truth, the defendant was either on

vacation or in training at the times and dates that these services were purportedly provided. The amount of these false billings totaled $175,174.00.

In anticipation of the sentencing hearing, the United States files this Sentencing Memorandum to address the offense conduct and the calculation of the Sentencing Guidelines, as well as to advise the Court of its sentencing recommendation. For the reasons set forth herein, the United States respectfully requests that this Court sentence the defendant to a term of imprisonment of **14 months**, to be followed by a three-year term of supervised release. The Court should also impose a restitution order of **$496,101.00**[1] and a special assessment of **$100**. The Plea Agreement also permits the Court to impose a fine, the amount of which (if any) the United States leaves to the Court's discretion.

## I.   Offense Conduct.

As noted at the outset of this Memorandum, the defendant is a licensed psychologist. For several years, she has provided psychological services to U.S. Government employees who are receiving workers' compensation benefits. The defendant bills the OWCP, a U.S. Government agency, for these services, and she is paid by the OWCP for these services with U.S. Government funds. Many of the defendant's U.S. Government employee-patients are employees of the U.S. Postal Service who have claimed to have suffered work-related injuries. These employees are often on injury-related leave or have been provided flexible work schedules in order to accommodate their injury and/or to accommodate their therapy sessions with the defendant. Shortly after the completion of the offense conduct in this case, the defendant was reviewed by the U.S. Postal Service's Office of Inspector General ("USPS-OIG"), working in conjunction with the OWCP. The USPS-OIG requested billing records, patient records, and appointment books from Weil. In the course of its investigation, the USPS-OIG discovered that Weil had submitted numerous bills to the OWCP for periods in which she was on vacation or in full-day training programs. These bills pertained to no less than ten (10) of the defendant's vacations in Hawaii from 2006 to 2009, as well as trips to other locations outside of the Bay Area. The total number of appointments for which the defendant sought reimbursement from the

---

[1] Under 18 U.S.C. § 3663(a)(3), "[t]he court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." Pursuant to the parties' Plea Agreement in this case, the defendant agreed to pay restitution to the United States for billings to the OWCP on dates and for instances other than when she was on vacation or in training. *See* Plea Agrm., ¶ 10, at 5-6.

OWCP when she was on vacation or in training was approximately 1,100.  Weil was reimbursed by OWCP in the amount of $175,174.00 for these billings.

The USPS-OIG's investigation indicates that Weil did take some telephone calls in lieu of office visit with at least some of her patients, and Weil herself has presented information to the Probation Office indicating that "may have counseled some of these patients on the telephone while in Hawaii." PSR, ¶ 9; *see also* Plea Agrm., ¶ 2, at 2:26-27.  As she acknowledges, however, it was not permissible to bill the OWCP using codes corresponding to in-person services when she was, in fact, only speaking with patients on the telephone.  *Id.*

In any event, the billings submitted by the defendant to the OWCP are notable.  For example, after Weil returned from her vacation in Hawaii in March 2006, *see* Plea Agrm., ¶ 2, at 2:22-28 (noting trip to Hawaii), she submitted a bill to the OWCP that sought payment for the following:

| Employee Name[2] | CPT | CPT Description | Begin Service Date |
|---|---|---|---|
| P1 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 3/1/2006 |
| P1 | 90901 | BFB TRAINJ ANY MODALITY | 3/1/2006 |
| P2 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 3/1/2006 |
| P2 | 90901 | BFB TRAINJ ANY MODALITY | 3/1/2006 |
| P3 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 3/1/2006 |
| P4 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 3/1/2006 |
| P5 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 3/1/2006 |
| P6 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 3/1/2006 |
| P7 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 3/1/2006 |
| NP1 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 3/1/2006 |
| P8 | 90806 | IPI-OB-M/S OFFICE 45-50 MIN | 3/1/2006 |
| P9 | 99215 | OFFICE OUTPT EST 40 MIN | 3/1/2006 |
| P10 | 90901 | BFB TRAINJ ANY MODALITY | 3/1/2006 |

*See* Ruppel Decl., ¶ 4.  According to these charges, the defendant treated 11 patients on March 1, 2006. Allegedly, eight patients each received 45-50 minutes of therapy that included biofeedback training (90876).  Two of them (P1 and P2) are patients for whom Weil "double billed" a separate code for biofeedback training (90901).  Another patient (P9) had a 40-minute office visit and another (P8) had

---

[2] In each of the tables set forth herein, the employees are identified by a unique number. Postal Service employees are identified by the letter P.  Government employees from other agencies are identified by the letters NP.

45-50 minutes of psychotherapy. Lastly, another patient (P10) simply had biofeedback training. *See* Ruppel Decl., ¶¶ 5 & 5.a-5.d. These billings amount to as much as eight hours, plus whatever time Weil should have provided for the solo biofeedback training session.

For March 3, 2006 (two days later), the defendant billed the following:

| Employee Name | CPT | CPT Description | Begin Service Date |
|---|---|---|---|
| P2 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 3/3/2006 |
| P2 | 90901 | BFB TRAINJ ANY MODALITY | 3/3/2006 |
| P3 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 3/3/2006 |
| P6 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 3/3/2006 |
| NP1 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 3/3/2006 |
| P8 | 90806 | IPI-OB-M/S OFFICE 45-50 MIN | 3/3/2006 |
| P1 | 90857 | IA GRP PSYCTX | 3/3/2006 |
| P10 | 90901 | BFB TRAINJ ANY MODALITY | 3/3/2006 |

*See* Ruppel Decl., ¶ 6. On that day, Weil allegedly treated four patients for psychotherapy with biofeedback training (approximately three hours) and one patient for biofeedback training, and the patient P1 allegedly received interactive "group therapy." The defendant also billed another 45-50 minute office visit. *See* Ruppel Decl., ¶¶ 6-7.

Weil was paid more than $7,000 for claims she submitted to OWCP for services rendered to government employees during the time that she was in Hawaii in March 2006. Plea Agrm., ¶ 2, at 2:28.

Over the next several years, the defendant submitted similar claims to OWCP for periods in which she was out of town. At the time that the offense conduct ended, the defendant submitted billings to OWCP for her trip to Hawaii in October and November 2009. *See* Plea Agrm., ¶ 2, at 2:28-3:6 (noting trip to Hawaii). For example, for November 2, 2009, the defendant billed the following:

| Employee Name | CPT | CPT Description | Begin Service Date |
|---|---|---|---|
| P1 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 11/2/2009 |
| P1 | 90880 | HYPXH | 11/2/2009 |
| P11 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 11/2/2009 |
| P11 | 90880 | HYPXH | 11/2/2009 |
| P12 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 11/2/2009 |
| P12 | 90880 | HYPXH | 11/2/2009 |
| P5 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 11/2/2009 |
| P5 | 90880 | HYPXH | 11/2/2009 |

USA'S SENTENCING MEMORANDUM
CR 14-0289 CRB                                              4

| Employee Name | CPT | CPT Description | Begin Service Date |
|---|---|---|---|
| P13 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 11/2/2009 |
| P13 | 90880 | HYPXH | 11/2/2009 |
| P14 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 11/2/2009 |
| P14 | 90880 | HYPXH | 11/2/2009 |
| P10 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 11/2/2009 |
| P10 | 90880 | HYPXH | 11/2/2009 |
| NP1 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 11/2/2009 |
| NP1 | 90880 | HYPXH | 11/2/2009 |
| NP2 | 90876 | INDIV PSYCPHYSTX BFB TRAINJ 45-50 MIN | 11/2/2009 |
| NP2 | 90880 | HYPXH | 11/2/2009 |

*See* Ruppel Decl., ¶¶ 8-9.  The defendant billed OWCP for psychotherapy sessions with biofeedback training for nine patients and a separate code for hypnotherapy for each of those patients.  Ostensibly, these sessions would have taken as much as nine hours or more out of the defendant's day.  The next day, November 3, 2009, the defendant billed for 45-50 minute psychotherapy sessions with biofeedback training for nine patients and a separate code for hypnotherapy for each of those patients.  *See* Ruppel Decl., ¶¶ 9-10.  On November 3, the defendant also billed for biofeedback training for another patient and another was charged for a code for interactive psychotherapy with non-verbal communication.  Ruppel Decl., ¶¶ 11-12.

Weil has admitted that she received more than $26,000 in reimbursements for billings she submitted to the OWCP for the period that she was in Hawaii in October and November 2009.  Plea Agrm. ¶ 2, at 3:5-6.

Other Non-Offense Conduct Pertaining to Additional Restitution Agreed to by the Defendant

As detailed in the Plea Agreement and PSR, the defendant Weil also submitted bills in 2008 and 2009 for instances in which she did not provide in-person psychological services.  Weil was reimbursed by OWCP in the amount of $136,529.00 for these billings, and she agreed in the Plea Agreement to pay restitution to the United States for these billings.

In addition, the defendant submitted bills to OWCP for services corresponding to a CPT code for which she did not have authorization to bill.  And, there were many instances in which she improperly billed two CPT codes on the same date of service.  The total of OWCP's reimbursements with respect to

USA'S SENTENCING MEMORANDUM
CR 14-0289 CRB                                        5

these CPT-code issues was $184,398.00.  Again, the defendant agreed in the Plea Agreement to pay restitution to the United States in this additional amount of $184,398.00.

With these two areas of additional restitution, the total restitution obligation is $496,101.00.

## II.     Guidelines Calculations.

The applicable Guideline provision for the offense of conviction is U.S.S.G. § 2J1.2.  Pursuant to that section, the base offense level is level 14.  Because the offense involved the fabrication of a substantial number of records (more than 1,100) and was otherwise extensive in scope, planning, or preparation (*e.g.*, the offense conduct occurred over the course of three years), an additional two points is added pursuant to U.S.S.G. § 2J1.2(b)(3)(A).

Assuming that the defendant continues to manifest an acceptance of responsibility for her crimes, she will be entitled at sentencing to a three-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

Based on the above calculations, the total offense level is level 13.  The defendant is in criminal history category I.  This establishes an applicable Guidelines range of 12 to 18 months, which falls within Zone C of the Guidelines.

## III.    Sentencing Recommendation.

In determining the appropriate sentence in this case, 18 U.S.C. § 3553(a) directs the Court to consider the following factors:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed—

   (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B)     to afford adequate deterrence to criminal conduct;

   (C)     to protect the public from further crimes of the defendant; and

   (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentence and the sentencing range established for—

   (A)     the applicable category offense committed by the applicable category of

defendant as set forth in the guidelines . . . .

(5)   any pertinent policy statement . . . .

(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Based on a consideration of these factors, the United States submits that a sentence of imprisonment of 14 months (which is slightly less than the mid-point of the advisory Guidelines range), coupled with a three-year term of supervised release, and a restitution order is sufficient, but not greater than necessary, to comply with the purposes set out in paragraph 2 of Section 3553(a).

**The Nature and Circumstances of the Offense, the Need to Impose a Sentence that Reflects the Seriousness of the Offense, and the History and Characteristics of the Defendant**

As an initial matter, the offense conduct in this case was serious and involved the defendant submitting more than 1,100 false billing entries to the OWCP, which is a federal agency tasked with administering (and paying for) federal workers' compensation benefits. This conduct occurred over the course of more than three years. That many of these bills were submitted for periods that the defendant was traveling in Hawaii or elsewhere brings to mind numerous descriptors, "brazen" and "chutzpah" perhaps being the chief among them. Simply put, the defendant's conduct takes the concept of "paid vacation" to a whole new level.

The conduct in which the defendant engaged fell outside the bounds of ethical billing practices. A provider of health care services must choose particular CPT codes that correspond to the services provided. It must certainly have occurred to the defendant that, even if she had telephone calls with her clients on dates that she was on vacation or out of town, it would certainly not be fair for her to be compensated at the same rate at which she was entitled to be compensated for in-person visits.

That being said, the defendant here agreed to waive indictment after a period of pre-indictment negotiation between her attorney and the government. She pleaded guilty to a felony crime, knowing that that plea might result in her incarceration. In addition, the defendant has agreed to pay restitution to the United States, not only for the losses associated with the offense conduct, but for other billings that

USA'S SENTENCING MEMORANDUM
CR 14-0289 CRB                    7

were *not* part of the offense conduct.  Furthermore, after the defendant's conduct was detected in early 2010, she ended her criminal conduct and no longer bills the OWCP for periods during which she is on vacation.  Moreover, the defendant's guilty plea and presumed subsequent incarceration should lead to her losing her license (although this may not be a certainty).  Finally, it appears that the defendant is devoted to her clients and is well-respected both by the individuals to whom she provides counseling and by others around her.  All of these facts certainly counsel for the 14-month Guidelines sentence recommended here by the government, which is in accordance with the parties' Plea Agreement.  Although the United States believes that a custodial sentence is warranted, it wholeheartedly recommends a 14-month sentence (rather than a higher sentence) based on an overall consideration of the Section 3553(a) factors.

**The Need to Promote Respect for the Law, to Provide Just Punishment for the Offense, and to Afford Adequate Deterrence to Criminal Conduct**

The defendant has been convicted of what is commonly described as a "white collar" offense.  A sentence of imprisonment of 14 months will promote respect for the law and will demonstrate that health care providers who submit false bills to insurers and to other payers in the health care industry will be held accountable when they break the law.

Promotion of respect for the law ties in with deterrence.  Cases involving white collar crime offer a special opportunity for the Court to achieve the goal of general deterrence.  The defendant – like most other white collar defendants – will probably not commit these specific illegal acts again, and so there is likely little need to specifically deter future conduct by her.  However, a 14-month prison sentence for the defendant's conduct will serve as a powerful deterrent against the commission of such crimes by others.  It is important to provide this deterrent because economic "crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity," and, thus, "are prime candidates for general deterrence."  *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (quotation omitted).  "Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment."  *Id.*  This defendant – and surely many like her – apparently calculated that, although it was illegal, submitting bills to the OWCP that did not accurately reflect the services that she was actually providing to U.S. Government employees was

worth the risk.  Indeed, this deterrent is especially important in cases involving the payment by the government of medical-related benefits, because the government generally has a "pay and chase" policy with respect to these bills.  Bills from approved health care providers that have a *prima facie* level of authenticity, accuracy, and propriety are simply paid by the government.  Unless the health care provider later confesses the false billing or a government audit detects improper billing practices, the conduct likely will go unchecked.  A sentence of 14 months will change that calculus for other individuals who find themselves facing the choices that the defendant faced, *i.e.*, whether or not to submit bills to the OWCP and other government payers that accurately reflect the services provided.

**Restitution**

The United States expects that the defendant will not contest the restitution amount of $496,101.00 set forth in the PSR's Recommendation.  The United States requests that the Court order that restitution be paid to the U.S. Department of Labor, Office of the Solicitor FEEWC, Attention Catherine P. Carter, 200 Constitution Ave NW S4325, Washington, DC 20210.

**IV.    Conclusion.**

For the reasons set forth above, the United States respectfully requests that the Court sentence the defendant Helena Weil to a term of imprisonment of **14 months**, to be followed by a three-year term of supervised release.  The United States also requests that the Court order the defendant to pay restitution as set forth above and in the PSR in the total amount of **$496,101.00**, and a special assessment of **$100**.

DATED:   January 14, 2015                           Respectfully submitted,

                                                    MELINDA HAAG
                                                    United States Attorney


                                                     /s/
                                                    KYLE F. WALDINGER
                                                    Assistant United States Attorney