MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorney

    450 Golden Gate Avenue, 11th Floor
    San Francisco, California 94102
    Telephone: (415) 436-6830
    Facsimile: (415) 436-7234
    E-mail: kyle.waldinger@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | No. CR 14-0289 CRB |
|---|---|---|
| Plaintiff, | ) ) | **UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM** |
| v. | ) ) | |
| HELENA WEIL, | ) ) | Hearing Date: April 22, 2015 |
| | ) | Time: 10:00 a.m. |
| Defendant. | ) | Court: Hon. Charles R. Breyer |

## I. Introduction

The defendant Helena Weil is scheduled to be sentenced on April 22, 2015.  The parties last appeared for sentencing on January 21, 2015.  Prior to that hearing, the government had submitted a sentencing memorandum describing the offense conduct and recommending a sentence of 14 months' imprisonment, three years of supervised release, $496,101.00 in restitution, and a special assessment of $100.  *See* USA Sent. Mem. (doc. 12).  The government's sentencing memorandum was supported by the Declaration of Tracey Ruppel, the case agent from the United States Postal Service's Officer of Inspector General.  *See* Ruppel Decl. (doc. 13).

Prior to and at the January 21 hearing, the defendant Helena Weil requested that the Court impose a sentence of home detention.  The defendant's recommendation was based in large part on

USA'S SUPP. SENTENCING MEMORANDUM
CR 14-0289 CRB

"the nature and circumstances of the offense" and "her own [] history and characteristics" (which were documented, in part, in a report from Robert Kaufman, Ph.D.). Def. Sent. Mem., (doc.14), at 1-2, as well as on "concerns about Dr. Weil's ability to serve a custodial sentence" because of her "significant mental health issues and significant physical issues." Ex. 1, at 16:9-14; *see also id.* at 16:15-17:9 (detailing health issues).

Based on these concerns, the Court stated that it wanted to have the defendant examined by a psychiatrist retained by the government. Ex. 1, at 20:3-4 & 26:5-21. The Court stated it wanted an answer to the question whether "a custodial sentence in a penal institution like Dublin would be injurious to the health of the defendant and if so how much so." Doc. 18.

Since that time, the government has retained the services of Anna Glezer, M.D., who is an Assistant Clinical Professor in the Department of Psychiatry at the University of California San Francisco. Dr. Glezer evaluated Weil for three hours on March 6, 2015, and produced a written report of her evaluation on April 1, 2015. A copy of that report is being submitted as under seal Exhibit 2.

**II.    Discussion**

Based on her examination, Dr. Glezer made the following observations and conclusions:

1. Weil's mental illness symptoms are consistent with several mental disorders, as listed in her report. Ex. 2, at 8-9.

2. Weil presented as "intermittently labile with episodes of tearful affect" and admitted to "having a histrionic nature." Dr. Glezer opined that "[t]hese episodes of distress are likely a combination of [Weil's] character coupled with the stress of her current situation." *Id.* at 9.

3. Dr. Glezer noted that because Weil has continued to work (albeit with more limited hours), she "must have a baseline level of functioning," which suggests that "Weil's symptoms are not severe to the degree that her work functioning has been significantly impaired." *Id.*

4. Weil utilizes "alternative and complementary medical practices, including supplements and acupuncture," to treat her mental health conditions. Dr. Glezer notes that, with respect to the supplements, "there is no evidence [in the available

scientific literature] that these treatments are effective for management of anxiety." Dr. Glezer recognizes, however, the "strong mind-body connection" and that the placebo effect can also be quite strong. She concludes that, "[i]t is possible that these medications are effective . . . ." *Id.*

5. Dr. Glezer notes that Weil is not currently taking psychotropic medications, and that she has not previous had a complete trial of any such medication because she discontinued use because of reported sensitivity. Dr. Glezer further notes that the BOP likely "would utilize these more traditional treatments for her mental health conditions" and that Weil would "possibly experience sensitivity to such medications in part due to her expectations and psychological mind-set and somatic preoccupation." *Id.* at 9-10.

6. Dr. Glezer observed that Weil reported that she has sensitivities to various foods and environmental toxins (including electromagnetic fields). *Id.* at 10.

7. Dr. Glezer concludes that, other than having a rash, it is not clear that the defendant has any other signs or symptoms of in utero exposure to a disease carried by her mother. *Id.* at 10.

8. Dr. Glezer notes that Weil sees "multiple practitioners weekly," and that, if incarcerated, she will "be able to have appointments with dental providers and possibly dermatology as well as mental health practitioners," though not acupuncturists, naturopathic clinicians, chiropractors, and masseuses. *Id.* at 10.

9. Dr. Glezer concludes that Weil will not likely have access to her dietary supplements and specialized diet while incarcerated by the BOP. *Id.* at 10.

10. **Dr. Glezer finally concludes** that the withdrawal of the treatment options that Weil has adopted for herself to date "would be deleterious to Dr. Weil's health." She also concludes that "[i]ncarceration would also increase her stress, as it would for any individual," and that that stress increase "is likely to manifest physically." Dr. Glezer opines that Weil's mental and medical condition would likely worsen in custody, but notes that "[t]he degree to which it would worsen likely depends

USA'S SUPP. SENTENCING MEMORANDUM
CR 14-0289 CRB                                                         3

on the duration of the incarceration." Dr. Glezer concludes by stating that she cannot say "that the available treatment options in an institutional setting (traditional psychotropic medications for example) would not be sufficient to mitigate the increased stress and treat Dr. Weil's symptoms of mental illness." Ex. 2, at 10-11.[1]

The United States requested additional information from medical staff in the BOP regarding the agency's ability to provide "necessary and appropriate care" for Weil. Attached hereto as under seal Exhibit 3 is a letter from Alison Leukefeld, Ph.D., the Chief of Mental Health Services for the BOP. If sentenced to a term of imprisonment, Weil's information would be evaluated by the BOP and would then be assigned one of the four care levels set forth in Dr. Leukefeld's letter. Inmates "are classified at the highest care level appropriate to their mental health needs." Ex. 3, at 2. At the highest care level (4), inmates are deemed to be in need of psychiatric hospitalization. *Id.* At care level 3, inmates are deemed to require weekly contacts with psychology staff. A care level 2 inmate is someone who is considered "stable mentally ill" and who only needs "periodic, but not intensive[,] psychological services." *Id.* Level 1 inmates are considered healthy, with only a limited need for psychological services.

The BOP has six Federal Medical Centers, which house level 4 and some level 3 inmates. Upon arrival, Weil would be screened and provided information about accessing the psychology services available at the particular institution. Dr. Leukefeld indicates that if Weil has a "specific medical need that requires the attention of non-BOP health care professionals or specialists," arrangements can be made for the inmate to receive appropriate care. *Id.*

Dr. Leukefeld recognizes that many of the "alternative practices to manage mental health problems" that Weil has adopted "would be unavailable to her in the BOP." *Id.* Nevertheless, Dr. Leukefeld notes that "a variety of traditional and evidence-based treatments would be available" to Weil. *Id.* For example, the BOP employs many mental health care providers and provides a wide range of mental health services to inmates. *Id.* (psychological assessments, crisis intervention, short-term and

---

[1] Unfortunately, Dr. Glezer is not available to be present at the hearing on April 22, 2015. (She is available on other dates, such as the mornings of May 4, May 18, or May 22. She is out of the country between May 6 and May 17.)

USA'S SUPP. SENTENCING MEMORANDUM
CR 14-0289 CRB                                                    4

group therapy, and "supportive psychotherapy for inmates who wish to gain insight into their motivations and actions"). For inmates with mental health diagnoses related to trauma, such as Weil, the BOP provides "group and/or individualized treatment utilizing evidence-based, cognitive behavioral treatment protocols." *Id.* at 3. Presumably (as Dr. Glezer notes), BOP's mental health treatments would include the use of psychotropic medications where medically appropriate.

Dr. Leukefeld concludes that "the BOP will be able to provide appropriate care for Dr. Weil to address her mental health issues." *Id.*

Based on the conclusions of Dr. Glezer and the information provided by Dr. Leukefeld regarding BOP's resources, the United States continues to believe that a sentence of incarceration is appropriate and warranted in this case, and that it will not represent a disproportionate or unjust sentence for this defendant. Indeed, it cannot be surprising that "[t]he BOP houses and treats a significant number of inmates with a wide variety of mental illnesses and conditions." Ex. 3, at 3. Although Weil reports a large number of mental health issues, they are not so unusual that the BOP will not be able to address them. And, although Weil has adopted a number of non-traditional approaches to dealing with her mental health problems, it is appropriate and not unreasonable that the BOP may choose to treat those issues with "evidence-based" approaches, rather than the approaches that Weil has opted to take.

Furthermore, in the past Weil has demonstrated an ability to adjust to new situations by, for example, flying to Hawaii on at least 10 occasions for sometimes-lengthy vacations between 2006 and 2009, as well as traveling to other locations outside of the Bay Area during that period.

Nevertheless, the government recognizes the import of the new information provided by Dr. Glezer and the burdens that Weil will place on BOP's system. Accordingly, the United States now *amends* its sentencing recommendation to request that the Court impose a "split" sentence. The Guidelines range here is 12 to 18 months, and Weil falls into "Zone C" of the Guidelines. Under Section 5C1.1 of the Guidelines, a "split" sentence of six months' imprisonment followed by a term of supervised release with six months of home detention is appropriate. Such a sentence takes into account the numerous factors that the Court must consider, which includes not only the history and characteristics of this defendant, but also the nature and circumstances of her very serious offense conduct and the need to send a message of deterrence to other medical care providers. Simply put, Weil

knowingly billed OWCP to the tune of $175,174.00 while on vacation or outside of the Bay Area. Other medical providers who bill the federal government must know that, if they are caught knowingly cheating the government, they will have to do more than simply pay back the money they wrongfully took.

**III.    Conclusion.**

For the reasons set forth above, the United States respectfully requests that the Court sentence the defendant Helena Weil to a term of imprisonment of **six months**, to be followed by a three-year term of supervised release in which the **first six months** is served in home detention. The United States also requests that the Court order restitution in the amount of **$496,101.00**, and a special assessment of **$100**.

DATED:   April 15, 2015                                        Respectfully submitted,

MELINDA HAAG
United States Attorney

/s/
KYLE F. WALDINGER
Assistant United States Attorney